No. 11-50311

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN R. MALONEY,

Defendant-Appellant.

---

Appeal from the United States District Court
for the Southern District of California
Honorable Dana M. Sabraw, District Judge, Presiding

APPELLANT'S OPENING BRIEF

JOHN C. LEMON
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0423

Attorney for Mr. Maloney

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BAIL STATUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9


I.
THE TRIAL COURT DEPRIVED MR. MALONEY OF HIS SIXTH
AMENDMENT RIGHT TO AN IMPARTIAL JURY BY SEATING A
JUROR WHO ADMITTED ACTUAL BIAS IN FAVOR OF LAW
ENFORCEMENT; THIS STRUCTURAL ERROR REQUIRES A NEW
TRIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A.    Introduction and Pertinent Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

B.    Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C.    The juror admitted actual bias in favor of law enforcement, and the
      trial court refused to strike the juror for cause; this structural error
      requires automatic reversal. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

i

**II.**

**THE PROSECUTOR IMPROPERLY RAISED NEW ARGUMENTS DURING HIS REBUTTAL SUMMATION, AND THE TRIAL COURT DENIED MR. MALONEY'S REQUEST FOR SURREBUTTAL SUMMATION, VIOLATING MR. MALONEY'S RIGHT TO DUE PROCESS; THIS MISCONDUCT REQUIRES A NEW TRIAL** . . . . . . . . . . 17

**A.**    **Introduction and Pertinent Facts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**B.**    **Standard of Review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**C.**    **The prosecutor committed misconduct by raising new arguments on rebuttal summation.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

**D.**    **The prosecutor's improper new arguments, compounded by the trial court's denial of surrebuttal summation, prejudiced Mr. Maloney and require a new trial.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**III.**

**THE TRIAL COURT REFUSED TO GIVE A JURY INSTRUCTION THAT IDENTIFIED THE NEXUS BETWEEN CHARACTER EVIDENCE AND REASONABLE DOUBT; THIS ABUSE OF DISCRETION REQUIRES A NEW TRIAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**A.**    **Introduction and Relevant Facts** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

**B.**    **Standard of Review** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

**C.**    **The trial court abused its discretion by giving a jury instruction that did not "fairly and adequately" identify the nexus between character evidence and reasonable doubt.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

      *1.*    *Clearly established law holds that character evidence may create reasonable doubt of guilt.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

ii

2.      *The trial court's jury instruction failed to fairly and adequately convey the core principle that evidence of a defendant's good character may create a reasonable doubt.* . . . . . . . . . . . . . . . . . . 39

**D.      The trial court's erroneous jury instruction prejudiced Mr. Maloney and requires a new trial.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

**IV.**
**THE CUMULATIVE EFFECT OF THE FOREGOING ERRORS ALSO REQUIRES A NEW TRIAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

**CERTIFICATE OF RELATED CASES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

**CERTIFICATE OF COMPLIANCE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

# TABLE OF AUTHORITIES

## CASES

*Carbo v. United States*
   314 F.2d 718, 746-47 (9th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Darden v. Wainwright*
   477 U.S. 168, 179-83 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 33

*Dyer v. Calderon*
   151 F.3d 970, 973 n. 2 (9th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . 12, 16

*Edgington v. United States*
   164 U.S. 361, 365-67 (1896) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38, 39

*Hein v. Sullivan*
   601 F.3d 897, 912, 914 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . 27, 33

*Kasper v. United States*
   225 F.2d 275, 278-79 (9th Cir. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . 42-43

*Michelson v. United States*
   335 U.S. 469, 476 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 39, 40

*Moore v. United States*
   344 F.2d 558, 560 (D.C. Cir. 1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Smith v. United States*
   305 F.2d 197, 205-07 (9th Cir. 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . 41-42

*Spangler v. United States*
   487 U.S. 1224 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States v. Broadwell*
   870 F.2d 594, 609 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*United States v. Burke*
       781 F.2d 1234, 1238 (7th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Daily*
       921 F.2d 994, 1010, 1011 (10th Cir. 1990) . . . . . . . . . . . . . 39, 40-41, 45-46

*United States v. Egan*
       860 F.2d 904, 907 n. 1 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Frederick*
       78 F.3d 1370, 1381 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*United States v. Giese*
       597 F.2d 1170, 1190 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*United States v. Gleason*
       616 F.2d 2, 25-26 (2d Cir. 1979) . . . . . . . . . . . . . . . . . . . . . 22, 23, 25-27, 33

*United States v. Gonzalez*
       214 F.3d 1109, 1111, 1112, 1114 (9th Cir. 2000) . . . . . . . . . . . . . . 12-16, 47

*United States v. Hinton*
       31 F.3d 817, 824 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Huddleston*
       811 F.2d 974, 977 (6th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*United States v. John*
       309 F.3d 298, 302, 305 (5th Cir. 2002) . . . . . . . . . . . . . . . . 38, 39, 40, 45, 46

*United States v. Karterman*
       60 F.3d 576, 579 (9th Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Machado*
       457 F.2d 1372, 1377 (9th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*United States v. Martinez-Salazar*
       528 U.S. 304, 316 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. McKoy*
   771 F.2d 1207, 1212 (9th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Nell*
   526 F.2d 1223, 1230 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*United States v. Powell*
   955 F.2d 1206, 1210 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37, 38

*United States v. Pujana-Mena*
   949 F.2d 24, 31 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Reyes*
   660 F.3d 454, 461 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*United States v. Rubinson*
   543 F.2d 951, 965 (2d Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Sanchez*
   659 F.3d 1252, 1254, 1256, 1260-61 (9th Cir. 2011) . . . . . . . . . . . 22, 27-29

*United States v. Schleibaum*
   130 F.3d 947, 949 (10th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*United States v. Skilling*
   130 S.Ct. 2896, 2923 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Soulard*
   730 F.2d 1292, 1303 (9th Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*United States v. Southard*
   700 F.2d 1, 23 (1st Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Spangler*
    838 F.2d 85, 87 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*United States v. Spillone*
    879 F.2d 514, 520 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Taylor*
    728 F.2d 930, 936-38 (7th Cir. 1984) . . . . . . . . . . . . . . . . . . . . 22, 23, 24, 27

*United States v. Weatherspoon*
    410 F.3d 1142, 1145-46, 1150-51 (9th Cir. 2005) . . . . . . . . . . . . . 21, 22, 27

*United States v. Woodley*
    9 F.3d 774, 780 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Weedin v. United States*
    380 F.2d 657, 660 (9th Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

## STATUTES

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3742 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## RULES

Fed. R. App. P. 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Crim. P. 29.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## LEGISLATIVE HISTORY

H.R.Rep. No. 94-247, 94th Cong., 1st Sess. 17 (1975) . . . . . . . . . . . . . . . . . . . . 24

IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) U.S.C.A. No. 11-50311 |
| | ) |
| Plaintiff-Appellee, | ) U.S.D.C. No. 3:10-cr-2803-DMS |
| | ) |
| v. | ) |
| | ) |
| **JOHN R. MALONEY,** | ) |
| | ) |
| Defendant-Appellant. | ) |
| _____ | ) |

**STATEMENT OF JURISDICTION**

John Maloney appeals his conviction and sentence for possession of marijuana with intent to distribute. *See* 21 U.S.C. § 841(a)(1). The district court asserted jurisdiction pursuant to 18 U.S.C. § 3231 and entered the judgment on August 5, 2011. CR 76; ER 2-5.[1] The notice of appeal was timely filed on August 9, 2011, within the 14-day period set out in Fed. R. App. P. 4(b). CR 77. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

---

[1] "CR" refers to the Clerk's Record; "ER" refers to the Appellant's Excerpts of Record.

**BAIL STATUS**

Mr. Maloney is currently in the custody of the federal Bureau of Prisons at Taft, serving the 63-month sentence imposed by the district court. His projected release date is October 4, 2015.

**STATEMENT OF THE ISSUES**

1. During voir dire, a prospective juror admitted his bias in favor of law enforcement. In response to further questioning, the juror never stated that he could be entirely impartial. Did the seating of this juror violate Mr. Maloney's Sixth Amendment right to an impartial jury?

2. Longstanding federal case law forbids a prosecutor from raising new arguments on rebuttal summation. Furthermore, if new arguments are presented, a trial court must offer the defendant an opportunity to respond in order to prevent prejudice. Here, the prosecutor raised three new arguments on rebuttal summation, and defense counsel requested surrebuttal summation to respond. Did the court's refusal of this request prejudice Mr. Maloney?

3. Under Supreme Court precedent, evidence of a defendant's good character may generate a reasonable doubt of guilt. Mr. Maloney's trialturned on his character and credibility and several character witnesses testified that Mr.

2

Maloney enjoys a reputation for honesty and law-abidingness. Did the trial court abuse its discretion in refusing Mr. Maloney's proposed jury instruction that identified the nexus between evidence of good character and reasonable doubt?

4. If none of the above errors independently warrants reversal, should this Court reverse for cumulative error?

## STATEMENT OF THE CASE

On July 14, 2010, the grand jury for the Southern District of California returned an indictment against Mr. Maloney, alleging possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). CR 10.

A jury trial began on April 18, 2011. CR 49. During jury selection, defense counsel moved to strike several jurors for cause, including prospective Juror 6. ER 158-59. The court denied the motion as to prospective Juror 6. ER 160-61. The defense exhausted all of its peremptory challenges, and prospective Juror 6 was seated on the petit jury as Juror 4. ER 163-68.

After the first day of trial had concluded, Mr. Maloney submitted proposed alternative and supplemental jury instructions, including an instruction on character evidence. ER 39. However, the trial court refused to give Mr. Maloney's proposed version of the jury instruction. *See* ER 16.

3

Summation began on the second day of trial. ER 344. After the prosecutor's rebuttal summation, defense counsel requested surrebuttal summation to address new arguments raised by the prosecutor. ER 386-87. The court denied this request and submitted the case to the jury. ER 387-90. On the third day of trial, during its deliberations, the jury submitted a question to the court. ER 395. Based on the nature of the question, defense counsel renewed his request for surrebuttal summation and, in the alternative, a mistrial. ER 403-04. The court denied both requests. ER 404. Later in the morning, the jury returned a guilty verdict. ER 406.

Mr. Maloney's sentencing hearing took place on August 5, 2011. CR 75. The court ordered Mr. Maloney to be imprisoned for a term of 63 months. CR 76. This appeal follows.

## STATEMENT OF THE FACTS

On June 17, 2010, John Maloney drove a commercial tractor-trailer to the Highway 78 Border Patrol checkpoint near Palo Verde, California. ER 199-201. He was unaccompanied. ER 201-02, 206-09, 246-47. A detector dog alerted to the tractor-trailer, and agents referred the vehicle to secondary inspection. ER 200-01. An agent asked Mr. Maloney to step out of the tractor, and he complied. ER 202.

Mr. Maloney consented to a second dog sniff of the tractor-trailer, and the detector dog alerted to the rear cargo compartment of the tractor. ER 203-04. Mr. Maloney then consented to a search of the tractor's interior. ER 205. Inside, agents found 112 sealed packages, which contained a total of approximately 146 kilograms of marijuana. ER 197. Nine of the packages were concealed in a garbage bag located on the top bunk in the sleeping compartment. ER 207. The remaining packages were in a latched compartment under the bottom bunk. ER 208.

Mr. Maloney's defense at trial was simple: he did not have knowledge of the marijuana hidden in the sleeper compartment. ER 234, 248. Rather, Mr. Maloney believed he was driving for a small delivery business, similar to work he had done in the past. ER 233, 248. Specifically, after receiving an honorable discharge from the Marine Corps., Mr. Maloney worked various jobs, mostly manual labor and driving, usually for small operations. ER 233, 249. More recently, Mr. Maloney had been struggling to find work. ER 233. Then, one of his part-time employers, Steve Day, informed Mr. Maloney that he knew a guy looking for truck drivers as independent contractors. ER 235. Day put Mr. Maloney in touch with this individual, Robert Hernandez. ER 235.

In late May or early June, Mr. Maloney and Hernandez met at a restaurant to discuss Hernandez's trucking business. ER 235-37, 294. In particular, Hernandez

proposed that Mr. Maloney drive a truck for the business as an independent contractor. ER 237. Hernandez would provide the truck, and Mr. Maloney would "work-to-own" the vehicle. ER 237. Mr. Maloney explained he only had a Class A learner's permit, but Hernandez indicated that he could still practice and get experience with another driver in the vehicle. ER 238.

Hernandez provided one of his old tractors and put Mr. Maloney's name on the side of the vehicle. ER 239. Furthermore, Mr. Maloney practiced driving the tractor with Hernandez for a couple of weeks. ER 240. At Hernandez's urging, Mr. Maloney registered the vehicle in his own name. ER 241. On June 10, 2010, Hernandez accompanied Mr. Maloney to his driving test at the DMV, but Mr. Maloney failed the test. ER 242, 292.

A week later, Hernandez called to use the tractor for a cargo trip, but suggested that Mr. Maloney accompany the driver, Rick Garcia, to gain some experience. ER 242. Mr. Maloney and Garcia then transported a load of Clorox from Riverside, California to Las Vegas, Nevada. ER 243. Shortly after they delivered the load, Hernandez called and requested they drive to El Centro, California, where he would procure a new delivery job. ER 243-44.

Upon arriving in El Centro, Mr. Maloney learned that Hernandez was struggling to set up the next delivery job. ER 244. Mr. Maloney waited and stayed

6

two nights in a hotel, but Garcia departed and did not return. ER 244-46. After the second night in the hotel, Hernandez announced a new delivery job, but Mr. Maloney would have to drive, alone, to Blythe, California, to pick up the cargo. ER 247. On his way to Blythe, Mr. Maloney was arrested at the checkpoint. ER 247. After his arrest, Mr. Maloney attempted to contact Hernandez, but Hernandez's phone was disconnected. ER 247. Furthermore, investigating agents attempted, but failed, to locate Hernandez. ER 310.

## SUMMARY OF THE ARGUMENT

**First**, the trial court failed to strike a biased juror for cause. During voir dire, the prospective juror stated he was predisposed in favor of law enforcement, which, in his opinion, had a "leg up" on other witnesses. Furthermore, even after repeated attempts by the court to rehabilitate the juror, he never made a clear and unequivocal statement of his ability to be entirely impartial. Because the seating of one impartial juror is structural error under the Sixth Amendment, Mr. Maloney is entitled to a new trial.

**Second**, the prosecutor committed misconduct by presenting three new arguments on rebuttal summation. Although this Court has not addressed this exact issue, several federal circuits have held that government counsel may not develop new arguments on rebuttal summation. Furthermore, if the government

7

improperly raises such arguments, the defense is entitled to an opportunity to respond, as a safeguard against prejudice. However, the trial court refused Mr. Maloney's request to respond by surrebuttal summation. Thus, the prosecutor's sneak attack on rebuttal, compounded by the lack of an opportunity to respond, violated due process. Because the misconduct could not have been harmless, a new trial is required.

**Third**, the trial court refused to give Mr. Maloney's proposed jury instruction on character evidence, which identified the nexus between evidence of good character and the necessary concept of reasonable doubt. Specifically, the proposed instruction stated that evidence of a defendant's good character, when considered along with all the evidence, can create a reasonable doubt of guilt. This rule was pronounced by the United States Supreme Court, and it remains the law. At Mr. Maloney's trial, however, the court gave an instruction on character evidence that omitted any reference to reasonable doubt. Based on the closeness of the case and the importance of Mr. Maloney's credibility, this error could not have been harmless.

**Fourth**, even if none of the above errors independently warrants reversal, this Court should reverse for cumulative error.

8

**ARGUMENT**

**I.**

**THE TRIAL COURT DEPRIVED MR. MALONEY OF HIS SIXTH AMENDMENT RIGHT TO AN IMPARTIAL JURY BY SEATING A JUROR WHO ADMITTED ACTUAL BIAS IN FAVOR OF LAW ENFORCEMENT; THIS STRUCTURAL ERROR REQUIRES A NEW TRIAL**

**A.    Introduction and Pertinent Facts**

During voir dire, the court asked if any juror "would be predisposed in favor of law enforcement." ER 151. Shortly thereafter, the following exchange took place between the court and prospective Juror 6:

| | |
|---|---|
| Juror: | I just want to put it out there, I had a lot of interaction with the San Diego Sheriff's Department. I would be predisposed to – you know, like what he was saying, because of their training, my experiences I have had with them, you know, all of my interactions I have had with the San Diego Sheriff's Department, more favorable. |
| | But I still think I could be impartial as far as, you know, carrying the weight. I just had to put it out there, I would be predisposed to have favorable. |
| Court: | Just so I am clear. If anyone from law enforcement took the stand, are you saying he or she starts a leg up on the other witnesses; or do you feel like they are just like any other witness and you have got to evaluate what they are going to say? |
| Juror: | For me there might be – well, they have a leg up. |

9

Court:      A leg up?

Juror:      Um-hum.

Court:      Okay. And it is for them to lose that favorable position, as far as credibility?

Juror:      Yeah. I mean, I would try to be –

ER 152-53. At this moment, another prospective juror interrupted:

Other Juror: They are innocent until proven guilty.

Juror:      Right. But their training and their experience, you know, and their daily – you know, in their job and activity.

Court:      In other words, let me ask you –

Juror:      They are experts. Again, when you bring an expert witness or somebody who tends to be an expert.

Court:      Right. Do you believe that as police officers or law enforcement that they – these individuals are subject to the same frailties that we all are –

Juror:      Yes.

Court:      – Regardless of our position?

With that belief in mind, do you feel that when someone from law enforcement takes the stand you would give them the benefit of the doubt; or would you start on a level playing field and determine, based on what they are saying, their responses to the questions, their ability to perceive or hear the things they are testifying to, those types of things, you would be able to determine whether you believed that testimony in whole or in part or not at

all?

Juror:      I think I could, you know, put it to a level playing field, even though my experiences in the past, you know, the role I am playing right now.

Court:      Can you set aside –

Juror:      I can set that aside and be *more* impartial.

Court:      So do you feel that you can set aside that prior experience and just evaluate each witness as he or she takes the stand?

Juror:      Right.  Yes.

ER 153-55 (emphasis added).  Defense counsel moved to strike this juror for cause.  ER 158-59.  The court, however, denied the motion.  ER 160-61.  The defense eventually exhausted all of its peremptory challenges, and prospective Juror 6 was seated as Juror 4.   ER 163-68.[2]

Juror 4 was biased in favor of law enforcement and deprived Mr. Maloney of his constitutional right to an impartial jury.  Accordingly, Mr. Maloney respectfully requests that this Court reverse his conviction and remand the case to the district court for a new trial.

---

[2] The remainder of the argument will refer to this juror as Juror 4.

11

**B.      Standard of Review**

The Sixth Amendment of the Constitution guarantees the criminal defendant

a trial by an impartial jury.  *United States v. Gonzalez*, 214 F.3d 1109, 1111 (9th

Cir. 2000).  A "trial court's findings of juror impartiality may be overturned only

for manifest error."  *United States v. Skilling*, 130 S.Ct. 2896, 2923 (2010).

However, "the presence of a biased juror cannot be harmless; the error requires a

new trial without a showing of actual prejudice."  *Gonzalez*, 214 F.3d at 1111

(quoting *Dyer v. Calderon*, 151 F.3d 970, 973 n. 2 (9th Cir.1998)).  In other words,

"the seating of any juror who should have been dismissed for cause . . . require[s]

reversal."  *Skilling*, 130 S.Ct at 2923 (quoting *United States v. Martinez-Salazar*,

528 U.S. 304, 316 (2000)).  Furthermore, "[d]oubts regarding bias must be

resolved against the juror."  *Gonzalez*, 214 F.3d at 1114.

**C.      The juror admitted actual bias in favor of law enforcement, and the
          trial court refused to strike the juror for cause; this structural error
          requires automatic reversal.**

Mr. Maloney was deprived of his Sixth Amendment right to an impartial

jury, because Juror 4 possessed an actual bias in favor of law enforcement.

"Actual bias" is "the existence of a state of mind that leads to an inference that the

person will not act with entire impartiality."  *Gonzalez*, 214 F.3d at 1112.  For

example, in *United States v. Nell*, the Fifth Circuit reversed the embezzlement

convictions of a union president on the ground of a juror's actual bias. 526 F.2d 1223 (5th Cir. 1976) (cited by this Court in *Gonzalez*, 214 F.3d at 1112). Specifically, the juror "reiterated [based on personal experience] how strongly he disliked unions" and "[n]ever once did he say that he would be able to render a fair and impartial verdict." *Id.* at 1230. In the present case, Juror 4 represents the mirror image of the juror in *Nell*. In particular, Juror 4 stated he held a "favorable" opinion of law enforcement based on his personal experience with the San Diego Sheriff's Department. ER 152-53. Moreover, Juror 4 indicated that law enforcement would have "a leg up" on the other witnesses and that law enforcement witnesses are "experts." ER 153. Thus, Juror 4 explicitly admitted bias in favor of law enforcement.

Furthermore, later equivocal responses do not cure the original expression of bias. See *Gonzalez*, 214 F.3d at 1112-14. In *Gonzalez*, this Court considered the following record of voir dire:

| Court: | Do you think you can put that [painful personal experience] aside and view Mr. Gonzalez fairly, and view the government's case fairly? |
|---|---|
| Juror: | I will try to. |
| Court: | Okay. Well, any-any doubt in your mind about that? I mean, that's-that's pretty-a case of drugs being pretty close and touching your life. But again you're not being |

13

> asked to rehash those problems, you're not being asked to decide whether drugs are good or bad. You're just going to hear evidence as to whether Mr. Gonzalez did or did not deal with drugs.

Juror:        Right. I'll try.

Court:        Do you think you can do that fairly?

Juror:        I'll try.

*Id.* at 1111. This Court reversed the conviction because, in part, the juror "was asked three times whether she could be fair, and each time she responded equivocally." *Id.* at 1114. Similarly, in the present case, each time the trial court inquired as to fairness and impartiality, Juror 4 responded with either equivocation or outright concession of bias. Initially, when the court asked the venire if anyone "would be predisposed in favor of law enforcement," Juror 4 responded: "But I still think I could be impartial as far as, you know, carrying the weight. I just had to put it out there, I would be predisposed to have favorable." ER 151, 153. At best, this is vague, contradictory, and equivocal. At worst, it concedes a predisposition in favor of law enforcement.

The court's first attempt to clarify the issue further revealed actual bias. Specifically, the court asked if law enforcement "starts a leg up on the other witnesses" or if "they are just like any other witness and you have got to evaluate

14

what they are going to say?" ER 153. In response, Juror 4 stated: "For me there might be – well, they have a leg up." ER 153. This answer is, quite obviously, *less* ambiguous and *more* indicative of improper bias.

The court's next attempt yielded much of the same. The court asked: "And it is for them to lose that favorable position, as far as credibility?" ER 153. Before he was interrupted by another juror, Juror 4 replied: "Yeah. I mean, I would try to be –" ER 153. The first portion of this response is a clear affirmation that law enforcement is presumptively credible. The second portion appears to be an equivocation of the type rejected by this Court in *Gonzalez. See Gonzalez*, 214 F.3d at 1114.

Then, after explaining to the interrupting juror that law enforcement officers are "experts," Juror 4 engaged in a final ambiguous exchange with the court. ER 153-55. In particular, the court asked again whether a law enforcement witness would "receive the benefit of the doubt" or "start on a level playing field." ER 154. This dialogue followed:

> Juror: I think I could, you know, put it to a level playing field, even though my experiences in the past, you know, the role I am playing right now.
>
> Court: Can you set aside –
>
> Juror: I can set that aside and be *more* impartial.

15

Court:      So do you feel that you can set aside that prior experience and just evaluate each witness as he or she takes the stand?

Juror:      Right.  Yes.

ER 154-55 (emphasis added).  Notably, Juror 4 stated that he could be "more" impartial.  ER 154.  The law, however, requires complete impartiality.  *Gonzalez*, 214 F.3d at 1112 (Actual bias is the "state of mind that leads to an inference that the person will not act with *entire* impartiality.") (emphasis added).  For example, if marriage requires complete fidelity, a groom's promise to practice "more fidelity," or "less cheating," falls short of the mark.  Thus, "more" impartiality is not "entire" impartiality.  And because the court's final question was limited to whether Juror 4 was capable of "just evaluat[ing]" the witnesses, Juror 4's penultimate response of "more impartial" is the final word.

Furthermore, any ambiguities arising from the voir dire of Juror 4 cannot purge the actual bias.  Rather, "[d]oubts regarding bias must be resolved against the juror."  *Gonzalez*, 214 F.3d at 1114.  In other words, "more impartial" rounds down to "not impartial."  Thus, Juror 4 possessed an actual bias, which is structural error, requiring automatic reversal.  *Gonzalez*, 214 F.3d at 1111; *Dyer*, 151 F.3d at 973 n. 2.  This Court should reverse and order a new trial.

16

**II.**

**THE PROSECUTOR IMPROPERLY RAISED NEW ARGUMENTS DURING HIS REBUTTAL SUMMATION, AND THE TRIAL COURT DENIED MR. MALONEY'S REQUEST FOR SURREBUTTAL SUMMATION, VIOLATING MR. MALONEY'S RIGHT TO DUE PROCESS; THIS MISCONDUCT REQUIRES A NEW TRIAL**

**A.     Introduction and Pertinent Facts**

During his rebuttal summation, the prosecutor presented three new

arguments to the jury.  First, the prosecutor discussed the absence of luggage in

Mr. Maloney's truck:

> Mr. Miller:  Which comes to the final thing that is not there.  And when I tell you this, you will realize why I remembered the scene in A Few Good Men.
>
> Remember the testimony: I met Mr. Hernandez.  He wanted me to drive.  I have this truck that has the long-haul capability.  I can drive a long way.  I can sleep in the back.  But I tell you what, I can only limit it to 10 or 11 days because of my personal situation.
>
> We also know that in one of those days he had a personal experience in a truck stop, in the back–or so he testified.  We don't have any mileage or trip logs or manifests, but he said, I spent the night in the truck stop.
>
> And the final thing that is not there: luggage.  Where is his stuff?
>
> I am going to – I know that I have long-haul capabilities for 10 to 11 days.  I go with this Clorox to Las Vegas.  I spend the night in Las Vegas.  I get a call, I got to go to

17

> El Centro. I have two days in El Centro. Where is his stuff? . . .
>
> He is arrested on the 17th. According to his testimony, he had spent from the 16th to the 17th in El Centro, and the 15th to the 16th in El Centro.
>
> According to his testimony, he spent the 14th to the 15th, Vegas truck stop.
>
> Where is his stuff? Knowing it was going to be 7 days – knowing that he could go up to 10 days, he has the sleeping accommodations.

ER 380-81. Second, he urged the jury to draw inferences from the text and timing

of Mr. Maloney's insurance certificate:

Mr. Miller: And then gets to the kicker – the other kicker.

The defendant testified: I went there with Mr. Hernandez to get this, the certificate of insurance.

Certificate of insurance, one of those three things that you need when you are going to be driving; especially as a trucker, as he said, because you have the checkpoint and the weigh stations and the possibility that you are going to get pulled over the CHP.

He obtained this on the 14th. The 14th. So by timing, he had obtained that, driven to Vegas, driven to El Centro. Spent two nights in El Centro, and then drove to the checkpoint toward Blythe.

Mr. Lemon: I object to that. It misrepresents the testimony.

Court: I would overrule the objection with the admonition that

this is counsel's argument, it is up to the jury to determine the facts.

Mr. Miller: Well, if my calculations are incorrect, then your memory will control. But counting those days, from how he testified, that he got that on the day that he left for Vegas.

Mr. Lemon: Again, I object. That misrepresents the testimony.

Court: Overruled.

Mr. Miller: So it would have been in there. But the other factor with regard to obtaining that on the 14th, as I stated, is that he obtained this insurance in his name as the owner, and designated the permissive drivers as Andrew David Gil. Provided that person's driver's license number.

So all indications – all the evidence shows that his testimony is to be disbelieved. That he obtained it as the owner, his name is on the side.

ER 381-82. Third, the prosecutor focused on, for the first time, Mr. Maloney's Class A learner's permit. The prosecutor's discussion included, but was not limited to, the following:

Mr. Miller: But, you know, I have been working labor. And then some guy remembered that I used to drive trucks, and got me in touch with him at the beginning of June, maybe at the end of May.

If that were the case, then the defendant would have had no reason to apply for and receive a Class A back on April 12th, 2010.

ER 383; *see also* ER 382-83, 384. Following the prosecutor's rebuttal summation,

19

defense counsel informed the court how these new arguments could mislead the jury and requested leave to make a surrebuttal summation. ER 386-87. The court, however, denied this request. ER 387-88.

Because the prosecutor's tactic of presenting new arguments in rebuttal summation was improper, and because the court refused the defense an opportunity to respond, Mr. Maloney respectfully requests that this Court reverse the conviction and remand for a new trial.

## B.    Standard of Review

In general, a district court's ruling on alleged prosecutorial misconduct is reviewed for an abuse of discretion. *United States v. Reyes*, 660 F.3d 454, 461 (9th Cir. 2011). However, "[i]ssues of prosecutorial misconduct involving mixed questions of fact and law are reviewed de novo." *Id.*; see also *United States v. Spillone*, 879 F.2d 514, 520 (9th Cir. 1989). For example, the district court's determination of "whether the defendant's allegations of misconduct are true [is] a purely factual inquiry." *Spillone*, 879 F.2d at 520. By contrast, it "is a question of law" whether the "prosecutor's conduct violated the Constitution." *Id.* In the present case, the entirety of each party's summation is on the record and undisputed. Thus, the issue of whether the new arguments raised by the prosecutor violate due process, and merit reversal, should be reviewed de novo.

20

In addition, if "defense counsel objects at trial to acts of alleged prosecutorial misconduct, we review for harmless error on defendant's appeal." *United States v. Weatherspoon*, 410 F.3d 1142, 1150-51 (9th Cir. 2005) (quoting *United States v. Hinton*, 31 F.3d 817, 824 (9th Cir.1994)). Specifically, the issue becomes "whether it is more probable than not that the prosecutor's conduct materially affected the fairness of the trial." *Reyes*, 660 F.3d at 461 (quoting *United States v. McKoy*, 771 F.2d 1207, 1212 (9th Cir.1985)). However, "absent such an objection, we review under the more deferential plain error standard." *Weatherspoon*, 410 F.3d at 1150-51 (quoting *Hinton*, 31 F.3d at 824).

Here, at the conclusion of rebuttal summation, defense counsel immediately requested a sidebar, objected to each new argument raised by the prosecution, explained the potential prejudice, and requested permission to conduct a surrebuttal summation. ER 386-87. Therefore, this Court should review under the less deferential harmless error standard.

**C.    The prosecutor committed misconduct by raising new arguments on rebuttal summation.**

Under the "general rule, Government counsel should not be allowed to develop new arguments on rebuttal, but should be restricted to answering the arguments put forth by defense counsel." *Moore v. United States*, 344 F.2d 558, 560 (D.C. Cir. 1965). Although an issue of first impression in the Ninth Circuit,[3] several federal circuits have adopted the rule. See *United States v. Taylor*, 728 F.2d 930, 936-38 (7th Cir. 1984); *United States v. Gleason*, 616 F.2d 2, 25-26 (2d Cir. 1979); *Moore*, 344 F.2d at 560. For example, during his rebuttal summation in *Gleason*, the prosecutor calculated and presented the sum of certain financial figures to further substantiate one of defendant's alleged fraudulent statements. *Gleason*, 616 F.2d at 25-26. Even though the calculations and argument were "based entirely on exhibits already in evidence," the Second Circuit

---

[3] Whether new arguments raised by the prosecutor during rebuttal summation violate a defendant's right to due process appears to be an issue of first impression in the Ninth Circuit. However, in the similar context of improper statements made by a prosecutor during trial, the analysis follows a two-part inquiry. *United States v. Sanchez*, 659 F.3d 1252, 1256 (9th Cir. 2011); *Weatherspoon*, 410 F.3d at 1145-46. First, we must "determine at the outset whether the prosecutor made improper statements during the course of the trial." *Weatherspoon*, 410 F.3d at 1146. Second, the analysis "will turn to the [prejudicial] effect of any such misconduct." *Id.*; *see also, e.g., United States v. Taylor*, 728 F.2d 930, 936-38 (7th Cir. 1984) (applying this two-part analysis where prosecutor "put forth new arguments" during rebuttal summation).

found the rebuttal improper. *Id.* at 26. Furthermore, if the trial court had not offered a surrebuttal summation to the defense, "a reversal might [have been] required." *Id.*

The Seventh Circuit has similarly held that "Government counsel should not be allowed to develop new arguments on rebuttal. . . ." *Taylor*, 728 F.2d at 936. The *Taylor* case involved a bank robbery where one of the robbers had carried a .45 caliber handgun. *Id.* at 931-32. During rebuttal summation, the prosecutor "reminded the jury" of witness Tudor's testimony that defendant had asked to borrow a .45 caliber handgun. *Id.* at 937. The "prosecutor then proposed to the jury that the defendant had wanted to borrow the gun in order to wipe off his fingerprints." *Id.* Finally, the prosecutor reviewed the testimony of Judi Taylor, defendant's former wife. *Id.* Because "the defense attorney's arguments did not address particular points of Tudor's testimony or the testimony of Judi Taylor," the Seventh Circuit held "the prosecutor's rebuttal comments on these issues were improper and constituted error." *Id.*

Furthermore, the legislative history of Rule 29.1 of the Federal Rules of Criminal Procedure equally supports the rule that a prosecutor may not present new arguments during rebuttal summation. Specifically, in its notes on proposed rule 29.1, the House Judiciary Committee stated:

> The rule is drafted in the view that fair and effective administration of justice is best served if the defendant knows the arguments actually made by the prosecution in behalf of conviction before the defendant is faced with the decision whether to reply and what to reply.

H.R.Rep. No. 94-247, 94th Cong., 1st Sess. 17 (1975). Thus, under the legislative history, new arguments during rebuttal summation, made *after* defendant's last opportunity to reply, undermine the objective of fairness.

Based on the rule prohibiting new arguments on rebuttal summation, several of the prosecutor's statements to the jury, in the present case, were improper. First, the prosecutor's discussion of luggage was unjustified. Defense counsel made no reference to the presence or absence of Mr. Maloney's luggage. Furthermore, the prosecutor did not discuss any aspect of Mr. Maloney's missing luggage during opening summation. Instead, the prosecutor saved the argument for rebuttal, including a polished introduction of the film, "A Few Good Men," to punctuate the point. ER 373-75. Mr. Maloney did not have notice of this argument, nor did he receive an opportunity to respond. Therefore, "the prosecutor's rebuttal comments on [the luggage] were improper and constituted error." *Taylor*, 728 F.2d at 937.

Second, the rebuttal argument on the insurance certificate was equally improper. During opening summation, the prosecutor argued that it was unreasonable for Mr. Maloney to be driving his tractor trailer without his insurance

24

certificate, but did not ascribe any significance to *when* Mr. Maloney obtained the certificate or *what* was on the certificate. ER 346-47. In turn, defense counsel confirmed that Mr. Maloney had obtained insurance for the vehicle on June 14, 2010. ER 364. On rebuttal, however, the prosecutor framed the timing of the insurance certificate as "the kicker." ER 381. Specifically, the prosecutor calculated the time between the issuance of the certificate and Mr. Maloney's arrest. ER 381-82. He then argued to the jury that the timing dictates the certificate would have been in the vehicle. ER 382. Under the decision in *Gleason*, new calculations at the "the eleventh-hour," after defense counsel has concluded summation, epitomize "unfairness and surprise." *Gleason*, 616 F.2d at 26. Moreover, the prosecutor highlighted the content of the certificate:

> That when he went to this place to buy the certificate of insurance, that Mr. Hernandez was not there. It was the defendant. His name is on it. The other name, if there is another person there, would have been Mr. Gil, I believe. Andrew David Gil. Not named Rick. Andrew David Gil, with enough information to know what his license is.

ER 384. Here, the prosecutor argued, for the first time, that the name of Andrew David Gil undermines the theory of Mr. Maloney's defense. Again, this argument was sprung at the last possible moment and constitutes error.

Third, the rebuttal argument on Mr. Maloney's Class A learner's permit was also improper. On opening summation, the prosecutor stated that Mr. Maloney

25

"had a permit," but did not make any further mention of the permit. ER 346.

Defense counsel then presented the issuance date of the permit to the jury for the sole purpose of showing that the permit was valid at the time of arrest. ER 365.

On rebuttal, however, the prosecutor portrayed the learner's permit as a smoking gun. ER 382-84. In particular, the prosecutor stated that Mr. Maloney did not meet Mr. Hernandez until "beginning of June, maybe late May." ER 382. Then, for the first time, he argued, "[i]f that were the case, then the defendant would have had no reason to apply for and receive a Class A back on April 12th, 2010." ER 383. Whether this argument is tethered to evidence is immaterial. *Gleason*, 616 F.2d at 26 (finding new argument in rebuttal summation improper, even where the argument was "based entirely on exhibits already in evidence"). Rather, the argument is improper, because the prosecutor unleashed it after the defense had concluded its summation.

In sum, the prosecutor raised three new arguments during rebuttal summation without giving notice to Mr. Maloney. Therefore, these new arguments, both individually and cumulatively, constituted improper statements to the jury. Furthermore, the court erred by denying Mr. Maloney an opportunity to respond to the new arguments. *See Gleason*, 616 F.2d at 26. Accordingly, the issue becomes whether the improper statements prejudiced Mr. Maloney. *See*

*Weatherspoon*, 410 F.3d at 1146; *see also Taylor*, 728 F.2d at 937; *Gleason*, 616 F.2d at 26.

**D.      The prosecutor's improper new arguments, compounded by the trial court's denial of surrebuttal summation, prejudiced Mr. Maloney and require a new trial.**

The determination of prejudice, with respect to improper statements made by a prosecutor, is a function of six factors:

> [1] the weight of the evidence, [2] the prominence of the comment in the context of the entire trial, [3] whether the prosecution misstated the evidence, [4] whether the judge instructed the jury to disregard the comment, [5] whether the comment was invited by defense counsel in its summation and [6] whether defense counsel had an adequate opportunity to rebut the comment.

*Hein v. Sullivan*, 601 F.3d 897, 914 (9th Cir. 2010) (summarizing the factors set forth by the Supreme Court in *Darden v. Wainwright*, 477 U.S. 168, 179-83 (1986)).  These six factors compel the reversal of Mr. Maloney's conviction.

First, the weight of the evidence is "not particularly strong" where a case boils down to a "battle over credibility."  *United States v. Sanchez*, 659 F.3d 1252, 1256 (9th Cir. 2011).  In *Sanchez*, the defendant entered the United States, by vehicle from Mexico, at the Calexico port of entry.  *Id.* at 1254.  A customs officer referred defendant to secondary inspection, a detector canine alerted to the vehicle, and a search revealed cocaine in the hidden compartments.  *Id.*  At trial, "the entire

27

question of guilt or innocence centered on whether [defendant] had committed the crimes under duress." *Id.* at 1260. The only evidence in support of the duress theory "was [defendant's] own testimony and statements he made to the border officials at the time of his arrest." *Id.* The government relied on circumstantial evidence to contest the theory, arguing that defendant "had not mentioned to the border officials that he had agreed to transport drugs across the border under duress." *Id.* This Court held the prosecutor's "send a memo" rebuttal argument[4] prejudiced the defendant, because:

> We cannot comfortably assume that the jury would have convicted [defendant] absent the prosecutor's misconduct, given the scarcity of evidence for either side on the duress claim, other than [defendant's] testimony. Moreover, the prosecutor presented the "send a memo" rhetoric during his rebuttal, thus ensuring that it was the last argument the jury heard before going to the jury room to deliberate.

*Id.* at 1260-61 (citations and quotations omitted). Similarly, Mr. Maloney's case boils down to the credibility of a defendant's testimony. There is no direct

---

[4] The prosecutor made the following improper statement to the jury during rebuttal summation: "[W]hy don't we send a memo to all drug traffickers, to all persons south of the border and in Imperial County and in California – why not our nation while we're at it. Send a memo to them and say dear drug traffickers, when you hire someone to drive a load, tell them that they were forced to do it. Because even if they don't say it at primary and secondary, they'll get away with it if they just say their family was threatened. Because they don't trust Mexican police, and they don't think that the U.S. authorities can help them. Why don't we do that?" *Sanchez*, 659 F.3d at 1256.

28

evidence that Mr. Maloney knew of marijuana in the tractor. Instead, the prosecutor raised three new arguments in rebuttal summation to inflate the value of the circumstantial evidence. Because the defense had no opportunity to respond, the prosecutor succeeded in "ensuring that it was the last argument the jury heard before going to the jury room to deliberate." *Id.* at 1261. The new arguments thus "affected the jury's ability to consider the totality of the evidence fairly." *Id.*

Under the second *Darden* factor, the prosecutor's improper statements featured prominently at trial. Specifically, the prosecutor delivered three new arguments in rebuttal summation, immediately before the judge made his concluding comments. In other words, three loud bells were ringing as the jury departed for the deliberation room. Furthermore, a substantial portion of the improper rebuttal summation stood out as a polished speech. In particular, the prosecutor began the rebuttal with a rehearsed, lengthy, and dramatic rendering of a scene from the film, "A Few Good Men." ER 373-75. The scene involves the protagonist's discovery that the murder victim had not packed his luggage, despite his superiors' assurances that he had been booked on the next transport off the base. ER 374-75. Based on the scene, the prosecutor extracted the theme that the things you do not find "are as telling as the evidence that you do find." ER 375.

The prosecutor then linked the scene and theme to the alleged facts of Mr.

29

Maloney's case. In relevant part, he argued the absence of luggage in Mr. Maloney's tractor was a "kicker" that showed "why [Mr. Miller] remembered the scene in A Few Good Men." ER 380, 381. This statement reveals the core unfairness of the prosecutor's conduct. His rendering of the scene from an iconic film was premeditated, as demonstrated by his polished delivery and theme construction. Thus, the prosecutor could have, and should have, delivered this argument during opening summation.

By hiding the argument until the last possible moment, he inflicted prejudice by denying the defense an opportunity to respond. As a result, Mr. Maloney's luggage absorbed the kind of attention only Hollywood can generate. In fact, the record shows the argument made an impression on the jury. During deliberations, the jury submitted a note regarding the inventory of Mr. Maloney's personal property. ER 403. As defense counsel argued, the jury "might [have been] looking for something along the lines of Private Santiago's luggage from . . . A Few Good Men." ER 403. Prominence feeds prejudice, and it is clear that the prosecutor's new arguments featured prominently for the jury.

Under the third *Darden* factor, the prosecutor's improper statements likely left the jury with a "misimpression." ER 386-87. With respect to the luggage, Mr. Maloney "would have testified that he had a bag [and] . . . he doesn't know what

30

happened to it." ER 386. The burden was not on Mr. Maloney, however, to prove that fact, and the prosecutor "may not use the defense's comments to justify the reference to facts or the assertion of claims which it could have, but did not, introduce at trial." *United States v. Rubinson*, 543 F.2d 951, 965 (2d Cir. 1976).

Furthermore, the prosecutor told the jury Mr. Maloney "had no reason" to obtain the Class A learner's permit on April 12, 2010, because Steve Day did not put Mr. Maloney in touch with Mr Hernandez until late May or early June. ER 383. This conclusion, however, does not necessarily follow from the evidence. For example, Mr. Maloney testified that he first learned from Steve Day that Mr. Hernandez was looking for truck drivers. ER 235. Moreover, the record does not indicate *when* Mr. Maloney had this conversation with Steve Day. Rather, Mr. Maloney testified that he received Mr. Hernandez's contact information, called Mr. Hernandez, and eventually met Mr. Hernandez at a restaurant. ER 235-36. Thus, even if Mr. Maloney did not have lunch with Mr. Hernandez until late May or early June, the record is silent as to whether Steve Day spoke to Mr. Maloney before the issuance date of the learner's permit. The defense is entitled to present alternative explanations not foreclosed by the evidence. Instead, the jury heard only the incriminating explanation from the prosecutor. Therefore, the court's denial of surrebuttal undermined the adversarial process and misled the jury.

31

The fourth factor also weighs in favor of Mr. Maloney, because the trial court did not instruct the jury to disregard the improper statements. Rather, these statements punctuated the end of the trial, and the jurors retired to deliberate with the new arguments fresh in their minds.

Fifth, defense counsel's summation did not invite the improper statements. Specifically, defense counsel did not address Mr. Maloney's luggage. Furthermore, he confirmed that Mr. Maloney had obtained insurance for the vehicle on June 14, 2010, but did not mention Andrew David Gil or the temporal relationship between the certificate and Mr. Maloney's arrest. ER 364. Finally, defense counsel presented the issuance date of the permit to the jury for the sole purpose of demonstrating the permit was valid at the time of arrest. ER 365. Therefore, the prosecutor's new theories and arguments exceeded the scope of defense counsel's summation.

The sixth factor weighs heavily in favor of Mr. Maloney, because defense counsel did not have an opportunity to respond to the improper statements. Immediately after rebuttal summation, defense counsel requested surrebuttal summation to address the three new arguments raised by the prosecutor. ER 387. The court, however, denied this request. ER 387-88. And by denying the defense an opportunity to respond, the court maximized the prejudice inflicted upon Mr.

32

Maloney. *See Gleason*, 616 F.2d at 26. The *Gleason* court held the prosecutor's "surprise rebuttal summation" might have required reversal "[h]ad no action been taken by the court." *Id.* Specifically, the trial judge had "recogniz[ed] the eleventh-hour unfairness and surprise [and] offered Gleason and the other defendants the opportunity to respond by way of a surrebuttal summation. . . ." *Id.* As a result, the opportunity to respond "adequately protected the defendants against any prejudice." *Id.* In the present case, the trial court did the opposite. Therefore, without an opportunity to respond, Mr. Maloney was subject to the full force of the prejudice.

In sum, all six *Darden* factors militate in favor of finding prejudice, because the prosecutor's surprise arguments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Hein*, 601 F.3d at 912 (quoting *Darden*, 477 U.S. at 181). Furthermore, it was a close case. The jurors deliberated for an entire afternoon, and the following morning, even though it took only three hours to put on all the evidence. ER 184, 260, 278, 339, 388, 398, 406. The prosecutor's surprise arguments, therefore, could not have been harmless beyond a reasonable doubt. Rather, these arguments were an exclamation mark at the end of trial and inflicted clear prejudice on Mr. Maloney's defense. This Court should reverse and order a new trial.

## III.

## THE TRIAL COURT REFUSED TO GIVE A JURY INSTRUCTION THAT IDENTIFIED THE NEXUS BETWEEN CHARACTER EVIDENCE AND REASONABLE DOUBT; THIS ABUSE OF DISCRETION REQUIRES A NEW TRIAL

### A.    Introduction and Relevant Facts

At trial, three witnesses testified as to Mr. Maloney's good character. First, Robert Mendoza testified to his 17 years of friendship with Mr. Maloney and further testified that Mr. Maloney has a good reputation for honesty and law-abidingness. ER 320-22. Second, Alicia Love testified to her 30 years of friendship with Mr. Maloney and further testified that Mr. Maloney is "very honest" and law-abiding. ER 328-30. Third, Richard Kelly testified for Mr. Maloney. Mr. Kelly, who is a sergeant in the California National Guard and volunteers as a commandeer in the American Legion, has known Mr. Maloney for approximately 25 years. ER 332-33. In part, Mr. Kelly's opinion of Mr. Maloney was based on time spent together playing basketball, attending social functions, and volunteering at the American Legion post. ER 333-34. Specifically, Mr. Kelly testified that Mr. Maloney is law-abiding and enjoys a good reputation for being a truthful person. ER 335-36.

Based on this evidence of good character, Mr. Maloney submitted the

34

following proposed jury instruction:

> Mr. Maloney presented evidence to show that he enjoys a reputation for honesty, truthfulness, and integrity in his community. Such evidence may indicate to you that it is improbable that a person of such character would commit the crimes charged, and, therefore, cause you to have a reasonable doubt as to his guilt. You should consider any evidence of Mr. Maloney's good character along with all the other evidence in the case and give it such weight as you believe it deserves. If, when considered with all the other evidence presented during this trial, the evidence of Mr. Maloney's good character creates a reasonable doubt in your mind as to his guilt, you should find him not guilty.

ER 39.  Furthermore, in his supporting points and authorities, Mr. Maloney emphasized his request for "an instruction referencing reasonable doubt, which is necessary to give legal effect to the evidence presented."  ER 46.  The trial court, however, declined to give this instruction to the jury.  ER 283-86.  Instead, the court gave the following jury instruction:

> You have heard evidence of the defendant's character for truthfulness, honesty and law abidingness.  In deciding this case, you should consider that evidence together with and in the same manner as all the other evidence in the case.

ER 16.[5]

---

[5] This was former instruction 4.4 in the Manual of Model Criminal Jury Instructions for the Ninth Circuit (2003).  The 2010 edition of the Manual omits an instruction on character evidence, citing *United States v. Karterman*, 60 F.3d 576, 579 (9th Cir.1995) (no plain error where trial court did not give instruction on character evidence).  The *Karterman* decision, however, was clearly based on a plain error standard of review, and should be limited to that context.

35

This jury instruction was an abuse of the trial court's discretion. Specifically, the instruction fails to explain that evidence of a defendant's good character may create reasonable doubt of guilt. The omission of reasonable doubt contravenes clearly established law and resulted in prejudice to Mr. Maloney's defense. Accordingly, Mr. Maloney respectfully requests that this Court reverse the conviction and remand for a new trial.

**B. Standard of Review**

A district court's formulation of jury instructions is reviewed for an abuse of discretion. *United States v. Woodley*, 9 F.3d 774, 780 (9th Cir.1993). Even if the defendant did not make a specific objection at trial, plain error review is inappropriate so long as the defendant "submitted an instruction on the issue to the district court making the court aware of the defendant['s] position." *United States v. Powell*, 955 F.2d 1206, 1210 (1992) (citing *United States v. Egan*, 860 F.2d 904, 907 n. 1 (9th Cir.1988)). In the present case, Mr. Maloney submitted a proposed jury instruction as to character evidence. ER 39. In addition, Mr. Maloney highlighted the importance of reasonable doubt as a necessary component of this jury instruction. ER 46. Therefore, reviewing for an abuse of discretion turns on "whether [the jury instruction] misled the jury or misstated the law." *Powell*, 955 F.2d at 1210. Specifically, the trial court abused its discretion if its jury

36

instructions failed to "fairly and adequately cover the issues presented." *Id.*

(quoting *United States v. Soulard*, 730 F.2d 1292, 1303 (9th Cir.1984)).

**C.     The trial court abused its discretion by giving a jury instruction that did not "fairly and adequately" identify the nexus between character evidence and reasonable doubt.**

   *1.     Clearly established law holds that character evidence may create reasonable doubt of guilt.*

Under clearly established law, evidence of a defendant's good character may create reasonable doubt. *Edgington v. United States*, 164 U.S. 361, 365-67 (1896). In *Edgington*, the trial court's jury instructions implied "that evidence of good character could only be considered if the rest of the evidence created a doubt of defendant's guilt." 164 U.S. at 365-66. The Supreme Court found reversible error, holding "good character, when considered in connection with the other evidence in the case, may generate a reasonable doubt." *Id.* at 366. Moreover, in certain circumstances, "an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although, without it, the other evidence would be convincing." *Id.*

The Supreme Court has since reaffirmed this nexus between character evidence and reasonable doubt:

   But this line of inquiry [the defendant's character] firmly denied to the State is opened to the defendant because character is relevant in

37

> resolving probabilities of guilt. He may introduce affirmative testimony that the general estimate of his character is so favorable that the jury may infer that he would not be likely to commit the offense charged. This privilege is sometimes valuable to a defendant for this Court has held that *such testimony alone, in some circumstances, may be enough to raise a reasonable doubt of guilt and that in the federal courts a jury in a proper case should be so instructed.*

*Michelson v. United States*, 335 U.S. 469, 476 (1948) (citing *Edgington*, 164 U.S. 361) (emphasis added). The rule set forth by the Supreme Court in *Edgington*, and punctuated in *Michelson*, remains the law. *See, e.g., United States v. Giese*, 597 F.2d 1170, 1190 (9th Cir. 1979) (reiterating "character testimony alone may be enough to raise a reasonable doubt"); *Weedin v. United States*, 380 F.2d 657, 660 (9th Cir. 1967) (citing *Michelson* for the proposition "that evidence of good character may be sufficient alone to create a reasonable doubt of guilt"); *see also, e.g., United States v. John*, 309 F.3d 298, 305 (5th Cir. 2002) (citing *Edgington* for the proposition that "character evidence may create a reasonable doubt as to guilt"). Therefore, the issue becomes whether the trial court's jury instruction fairly and adequately conveyed the core principle that evidence of a defendant's good character "may generate a reasonable doubt." *Compare Edgington*, 164 U.S. at 366, *with Powell*, 955 F.2d at 1210.

> 2. *The trial court's jury instruction failed to fairly and adequately convey the core principle that evidence of a defendant's good character may create a reasonable doubt.*

38

In a "proper case," a trial court should instruct the jury that testimony of defendant's good character "may be enough to raise a reasonable doubt of guilt . . . ." *Michelson*, 335 U.S. at 476 (citing *Edgington*, 164 U.S. 361). The proper case arises in the criminal context where (1) defendant presents evidence of his or her good character, and (2) the character evidence "concern[s] traits that are relevant to the charged offense." *United States v. Daily*, 921 F.2d 994, 1010 (10th Cir. 1990), overruling on other grounds recognized by *United States v. Schleibaum*, 130 F.3d 947, 949 (10th Cir. 1997). In *Daily*, the Tenth Circuit held that testimony of defendants' good character was sufficient to satisfy the first condition. With respect to the second condition, the court recognized the "trait of being law-abiding . . . is relevant to virtually all offenses." *Id.* at 1011. Similarly, the Fifth Circuit has found a proper case where the defendant called character witnesses and "guilt hinged entirely on credibility." *See John*, 309 F.3d at 302.

Mr. Maloney's trial epitomized the proper case for a jury instruction under *Michelson*. First, Mr. Maloney introduced substantial evidence of his good character. Three witnesses testified to knowing Mr. Maloney for long periods of time and uniformly testified that he is an honest and law abiding man. ER 320-22, 328-30, 332-36. Second, the central issue at trial was whether Mr. Maloney had knowledge of the marijuana in the tractor. The government relied solely on

39

circumstantial evidence, such as the location of marijuana above the top sleeping bunk. Mr. Maloney, however, testified and directly denied any knowledge of the marijuana in the tractor. ER 234, 248. Therefore, Mr. Maloney's trial "hinged entirely on credibility." *See John*, 309 F.3d at 302. As a result, the nature and circumstances of Mr. Maloney's trial triggered a mandatory jury instruction that testimony of defendant's good character "may be enough to raise a reasonable doubt of guilt. . . ." *Michelson*, 335 U.S. at 476.

Even though the *Daily* and *John* decisions involved the trial courts' failure to provide *any* instruction as to character evidence, both opinions emphasize the importance of connecting the concepts of character evidence and reasonable doubt. For example, in *John*, the Fifth Circuit reversed the trial court, because "[m]ore importantly, the instruction would have informed the jury that character evidence 'may give rise to a reasonable doubt, since you may think it improbable that a person of good character in respect to those traits would commit such a crime.'" *John*, 309 F.3d at 302 (quoting language of defendant's proposed jury instruction). Likewise, the *Daily* court found reversible error where "the jury was not instructed that it might properly consider the evidence of good character, which may (when viewed in the light of other evidence) generate a reasonable doubt." *Daily*, 921 F.2d at 1011. Thus, in order to be adequate, the jury instruction must identify a

40

nexus between evidence of good character and the concept of reasonable doubt.

This Court's precedent further supports this rule. In *Smith v. United States*, the issue was whether evidence of good character requires a "standing alone" jury instruction. 305 F.2d 197, 205-07 (9th Cir. 1962). In its basic form, the "standing alone" instruction states that "testimony showing a good character may *alone* [be] sufficient to create a reasonable doubt and require a verdict of not guilty." *Id.* at 205 (emphasis added). The *Smith* court held that a "standing alone" instruction, "absent a special reason," is not required.[6] *Id.* at 206. At the same time, however, this Court further held that the trial court satisfied "the underlying principle announced in the *Edgington* and *Michelson* cases" by giving the following jury instruction: "the fact of Smith's good character is for the jury to consider with other facts concerning him because that testimony, like other testimony, *may*

---

[6] The U.S. Supreme Court has not yet resolved whether a "standing alone" jury instruction is required in cases where a defendant has presented evidence of his good character. *See Spangler v. United States*, 487 U.S. 1224 (1998) (White, J., dissenting from denial of writ of certiorari). Some of the federal circuits disapprove of using the word "alone," because it can mislead the jury. *Id.* (analyzing survey of federal circuits). Mr. Maloney, however, did not request such an instruction. Instead, Mr. Maloney's proposed jury instruction, in relevant part, read: "If, *when considered with all the other evidence presented during this trial*, the evidence of Mr. Maloney's good character creates a reasonable doubt in your mind as to his guilt, you should find him not guilty." ER 39. Thus, any criticism of a "standing alone" instruction does not apply to Mr. Maloney's proposed jury instruction.

41

*generate a reasonable doubt as to Smith's guilt, justifying an acquittal.*" *Id.* at

205, 206 (emphasis added).  Mr. Maloney did not request a "standing alone"

instruction.  Instead, Mr. Maloney requested what the defendant in *Smith* received,

an instruction to the jury that character evidence, when considered with the other

evidence, may generate a reasonable doubt as to guilt.  ER 39.

More recent decisions of this Court do not undermine the holding in *Smith*.

For example, in *Carbo v. United States*, the Ninth Circuit held a "standing alone"

instruction was not constitutionally required, in this particular case, because the

instruction given by the trial court "strongly suggested to the jury that it might find

it improbable that a man of good reputation would commit a particular crime."  314

F.2d 718, 746-47 (9th Cir. 1963).  Furthermore, the *Carbo* court cited *Kasper v.*

*United States*, 225 F.2d 275 (9th Cir. 1955), for the "rule in this circuit."  *Carbo*,

314 F.2d at 746 n. 46.  Specifically, this cited section of the *Kasper* decision holds:

> As to the court's instruction that character evidence "is to be considered
> by you along with all of the other evidence in the case in determining the
> guilt or innocence of the defendant," this was not erroneous; and it was
> not necessary to charge upon this subject in the language of appellant's
> proffered instructions. *The court fully instructed the jury on the question
> of reasonable doubt*, clearly charging them that they must acquit if, from
> all of the evidence *including the character evidence*, they had a
> reasonable doubt of appellant's guilt.

225 F.2d at 278-79 (emphasis added); see also *United States v. Machado*, 457 F.2d

1372, 1377 (9th Cir. 1972) (citing *Kasper* and holding trial court's instruction "that the character evidence adduced on [defendant's] behalf may have been sufficient to raise a reasonable doubt of guilt . . . was fully consistent with what this court has required of the district courts"). Therefore, this Court's precedent supports a rule that a jury instruction on character evidence must incorporate the concept of reasonable doubt.

Furthermore, nationwide federal circuit law equally supports the rule. *See, e.g., United States v. Broadwell*, 870 F.2d 594, 609 (11th Cir. 1989) (holding trial court's jury instruction was "adequate," because the "instruction makes clear that the jury may consider character evidence in determining [defendant's] guilt beyond a reasonable doubt"); *United States v. Huddleston*, 811 F.2d 974, 977 (6th Cir. 1987) (citing *Edgington* for the proposition that a trial court is "required" to "instruct the jury that character evidence, when considered with other evidence, may create a reasonable doubt as to a defendant's guilt"). Even the federal circuits that reject the "standing alone" jury instruction have approved the reasonable doubt language. *See United States v. Pujana-Mena*, 949 F.2d 24, 31 (2d Cir. 1991) (conducting extensive analysis of *Edgington* and *Michelson* and holding "it is sufficient for the trial judge to instruct the jury to consider character evidence along with all the other evidence in determining whether the prosecution has

43

proven guilt beyond a reasonable doubt"); *United States v. Burke*, 781 F.2d 1234, 1238 (7th Cir. 1985) (approving jury instruction charging that "[c]haracter evidence may be considered by you in determining whether the Government has proven the defendant's guilt beyond a reasonable doubt"); *United States v. Southard*, 700 F.2d 1, 23 (1st Cir. 1983) (approving jury instruction charging that character evidence "may be such as to raise a reasonable doubt in your mind which could justify an acquittal, but you consider that as evidence, along with all the other evidence in the case").

In particular, the Third Circuit has held that the omission of the "standing alone" language is not an abuse of discretion "so long as" the jury instruction "calls the jury"s attention to its duty to take character evidence into account with all of the other evidence in deciding whether the government has proved its charge *beyond a reasonable doubt*." *United States v. Spangler*, 838 F.2d 85, 87 (3d Cir. 1988) (emphasis added). Therefore, in order to "fairly and adequately cover the issue" of character evidence, the jury instruction must explain that evidence of good character may create a reasonable doubt of guilt.

In the present case, however, the trial court failed to meet this standard. Contrary to Mr. Maloney's proposed instruction, the court's jury instruction on character evidence omitted any reference to reasonable doubt:

44

> You have heard evidence of the defendant's character for truthfulness, honesty and law abidingness. In deciding this case, you should consider that evidence together with and in the same manner as all the other evidence in the case.

ER 16. By failing to educate the jury on the nexus between character evidence and the core concept of reasonable doubt, the trial court abused its discretion.

**D.    The trial court's erroneous jury instruction prejudiced Mr. Maloney and requires a new trial.**

The trial court's failure to instruct the jury on the nexus between character evidence and reasonable doubt prejudiced Mr. Maloney's defense. This Court has not addressed this precise issue, but decisions from other circuits are instructive. *See Daily*, 921 F.2d at 1011; *John*, 309 F.3d at 305. In *Daily*, which involved a complex fraud trial, the Tenth Circuit found reversible error where the trial court failed to give a jury instruction on character evidence. 921 F.2d at 1011. Specifically, the court stated: "It cannot be deemed nonprejudicial in a tough case like this one that the jury was not instructed that it might properly consider the evidence of good character, which may (when viewed in the light of other evidence) generate a reasonable doubt." *Id.*

Similarly, in *John*, the Fifth Circuit held that the trial court "committed reversible error in refusing [defendant's] request for a character instruction." 309 F.3d at 302, 305. In finding prejudice, the John court highlighted that "[c]haracter

45

was necessarily a vital part of [the] defense," because "the case boiled down to a 'swearing-match' between the victim and the accused." *Id.* at 305. Therefore, "[g]iven the closeness of the case, had the jury been told that character evidence might create a reasonable doubt as to guilt, the outcome may well have been different." *Id.*

As set forth by Section II(D) above, the case against Mr. Maloney was not strong, because it boiled down to witness credibility. The central issue was whether Mr. Maloney had knowledge of the marijuana in the tractor. Mr. Maloney took the stand and denied having knowledge. ER 234, 248. Moreover, unlike the situation in *John*, the government did not have a witness testify on this central issue. Rather, it was Mr. Maloney's word against the circumstantial evidence collected by agents. In other words, the outcome hinged on the credibility of Mr. Maloney, and only Mr. Maloney. Thus, the trial court's failure to inform that jury that evidence of Mr. Maloney's good character may create a reasonable doubt of guilt dealt a powerful blow to the defense. It could not have been harmless beyond a reasonable doubt. Accordingly, this Court should reverse and order a new trial.

46

**IV.**

## THE CUMULATIVE EFFECT OF THE FOREGOING ERRORS ALSO REQUIRES A NEW TRIAL

Even if this Court concludes that no single error, examined in isolation, warrants reversal, "the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). To briefly recap, (1) the court failed to strike a juror who was biased in favor of law enforcement; (2) the prosecutor sandbagged Mr. Maloney with three new arguments on rebuttal summation; and (3) the court failed to instruct the jury on the nexus between character evidence and reasonable doubt.

If this Court finds the juror was biased, then reversal is automatic. *Gonzalez*, 214 F.3d at 1111. Regardless, the cumulative effect of the surprise arguments in rebuttal summation and deficient jury instruction amounts to compelling prejudice. In particular, "[i]n those cases where the government's case is weak, a defendant is more likely to be prejudiced by the effect of cumulative errors." *Frederick*, 78 F.3d at 1381. The government's case against Mr. Maloney was limited to circumstantial evidence and hinged on a credibility determination; the prosecutor's misconduct and the trial court's deficient jury instruction thus prejudiced Mr. Maloney. He should get a new trial.

## CONCLUSION

This Court should reverse the conviction and remand for a new trial.


Respectfully submitted,


Dated: December 8, 2011

/s John C. Lemon
**JOHN C. LEMON**
1350 Columbia Street, Suite 600
San Diego, California  92101
Telephone:  (619) 794-0423

Attorney for Mr. Maloney

48

## CERTIFICATE OF RELATED CASES

I am not aware of any related cases.

Respectfully submitted,

Dated: December 8, 2011

/s John C. Lemon

**JOHN C. LEMON**
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0423

Attorney for Mr. Maloney

49

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the attached Opening Brief is:

Proportionately spaced, has a typeface of 14 points or more, and contains 10,780 words.

Dated: December 8, 2011        /s John C. Lemon
                               **JOHN C. LEMON**
                               1350 Columbia Street, Suite 600
                               San Diego, California 92101
                               Telephone: (619) 794-0423

                               Attorney for Mr. Maloney

50

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2011, I electronically filed the foregoing opening brief with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 8, 2011        /s John C. Lemon
**JOHN C. LEMON**
1350 Columbia Street, Suite 600
San Diego, California 92101
Telephone: (619) 794-0423

Attorney for Mr. Maloney